**PHILLIPS PETROLEUM COMPANY,**
Plaintiff in Error,

v.

**CORPORATION COMMISSION of the State of Oklahoma, and CRA, Inc., Defendants in Error.**

No. 42061.

Supreme Court of Oklahoma.

Feb. 9, 1971.

Rehearing Denied March 30, 1971.

Wm. J. Zeman, Lloyd G. Minter, Bartlesville, Edward J. Fauss, Galen E. Ward, Oklahoma City, for plaintiff in error.

Brown, Verity & Brown, by Paul Brown, Oklahoma City, for defendant in error CRA, Inc.

WILLIAMS, Justice.

Phillips Petroleum Co., plaintiff in error, appeals from an order of the Oklahoma Corporation Commission entered in a proceeding initiated by an application filed by CRA, Inc. The order complained of deletes a producing sand referred to as the Upper Morrow "A" in Sections 1 and 11, Township 1 North, Range 15 ECM, Texas County, from the purview of an earlier or-

der establishing the entire Morrow sand as a common source of supply.

The principal question presented is whether a change in the actual knowledge of the Corporation Commission is sufficient to support a Commission order modifying a prior order determining what constituted a common source of supply absent substantial evidence indicating a change of physical conditions in or a change of technical knowledge relative to the common source of supply.

Prior to the initiation of this proceeding in the Commission, Phillips had applied for 640 acre spacing covering the entire Morrow sand underlying Townships 1 and 2 North, Ranges 14 and 15 ECM, Texas County. Under Order No. 58465, dated March 31, 1965, the Commission established this 640 acre pattern and found the entire Morrow sand in the area to be a common source of supply. As a result of this order, the allowable production from CRA's Van Tine No. 1 well in Section 11, Township 1 North, Range 15 ECM, was reduced to conform with the other wells in the spaced area.

After realizing the effect of Order No. 58465 on the production of its Van Tine No. 1 well, CRA filed its application contending that the Upper Morrow sand from which its well and an adjoining one in section 1 were producing was a separate and distinct common source of supply not related to any other Morrow sand production in the area. CRA sought the removal of Sections 1 and 11 from the purview of Order No. 58465 and the classification of the Upper Morrow sand underlying these sections as a separate common source of supply. CRA also sought the cancellation of the overage which had been charged to its Van Tine well.

At the hearing before the trial examiner, CRA presented opinions of an expert witness to the effect that the Upper Morrow "A" sand was a separate and distinct source of supply from the remainder of the Morrow zone in the area. This witness admitted his opinion was based upon rele-vant geological data available when the prior spacing order was entered and stated he did not disagree with the exhibits by Phillips in the prior hearing but did differ as to their interpretation. In summary, Phillips' expert witnesses testified it was their opinion the entire Morrow sand was a common source of supply.

In his report to the Commission, the trial examiner found the evidence relative to whether the Upper Morrow "A" sand was a separate source of supply did not preponderate either way. The examiner further found the evidence did not establish a change of conditions or a change of knowledge of conditions and recommended the denial of the CRA's application.

After hearing before the Commission en banc, Order No. 62317 was entered finding "* * * that at the time this Commission issued its Order No. 58465 it was not made clear to the Commission that the Upper Morrow "A" sand underlying Sections 1 and 11 was a separate and distinct reservoir in the Morrow formation." The Commission held the Upper Morrow "A" sand to be a separate source of supply from the other sands in the Morrow formation in the area and removed such sand from the purview of Order No. 58465. From order No. 62317, Phillips brings this appeal.

In applicable part, section 111, 52 O.S.1961, provides:

"No collateral attack shall be allowed upon orders, rules and regulations of the Commission made hereunder, but the sole method of reviewing such orders and inquiring into and determining their validity, justness, reasonableness or correctness shall be by appeal from such orders, rules or regulations to the Supreme Court."

In applying this statute to determine the validity of an order modifying a prior spacing order of the Commission, we have stated the authority to modify must necessarily involve a changed factual situation from that existing at the time of the prior order. Otherwise, the proceeding in which the modification order was entered would

constitute an unauthorized collateral attack upon the original order. See Wood Oil Co. v. Corporation Commission, 205 Okl. 537, 239 P.2d 1023 (1950); Carter Oil Co. v. State, 205 Okl. 374, 238 P.2d 300 (1951). In the first paragraph of the syllabus in Cameron v. Corporation Commission, Okl., 414 P.2d 266 (1966), we held:

"The Corporation Commission is without authority to entertain or grant an application to vacate, amend or modify a spacing and well drilling unit established by a former order of The Commission which has become final, in the absence of a showing of a substantial change of knowledge of conditions existing in the area since the former order was made or other change of factual situations specified in the statutes."

In Phillips Petroleum Co. v. Corporation Commission, Okl., 461 P.2d 597 (1969), we quoted with approval the following language from Harris, Modification Order Pertaining to a Common Source of Supply, Okl., Law Rev. 125, at pp. 132–133:

" * * * Because substituted substantive rights actually vest in the property owners by the force of such orders, the Oklahoma Supreme Court has laid down the rule that a modifying order will be condemned as a prohibitive collateral attack unless a 'substantial change of condition' has intervened between the dates of the existing and the superseding orders. What constitutes a change of condition sufficient to satisfy the requirement? As a logical proposition, three kinds of change of condition are theoretically possible. The first may be designated as an internal change of condition. It is characterized by an actual change in the physical behavior of the reservoir occasioned by development and depletion. Such a change may or may not be predictable in the early stages of development * * * The second kind may be called an external change of condition. In this instance, the physical behavior of the reservoir remains constant, but the information gained through development or depletion experience dem-

onstrates that the conclusions reached originally were incorrect. * * * An external change of condition is characterized by the fact that the animal was incorrectly described in the first instance —the dog was called a cat and the mistake was discovered later. That such a change of condition satisfies the legal requirement is supported by the first *Peppers* case [Application of Peppers Refining Co., Okl., 272 P.2d 416 (1954)]. The third possible kind of change of condition defies tagging with an appropriate label. * * * In this case no actual change in the physical behavior of the reservoir is experienced, * * * Nevertheless, new scientific knowledge and technology may add new dimensions to the basic legal concepts of waste and correlative rights, or the statutes may be superseded by others which re-define these terms."

In this proceeding in the Commission, CRA admitted the geological data on which it based its opinion that the Upper Morrow "A" sand was a separate and distinct reservoir was available at the time the prior spacing order was issued. It also appears much of this data was introduced by Phillips at the earlier hearing. An application of the above cited principles to these facts would require our reversal of the order involved herein.

However, CRA contends that there has been a change of knowldge of conditions on the part of the Commission. This contention is based upon language of the order stating that "it was not made clear" to the Commission at the earlier hearing that the Upper Morrow "A" was a separate source of supply.

In our opinion, the proceeding in the Commission was a collateral attack on the prior order which was not appealed and which has become final. CRA, although having legal notice, failed to appear and participate in the original hearing. In this proceeding CRA introduced much if not all the same evidence as earlier introduced, stressed its own interpretation of this data, and requested the Commission to modify

the original order on the basis of this interpretation which CRA contends was not sufficiently stressed before. This is precisely the situation prohibited by § 111, supra. The phrase "change in knowledge of conditions" (as would warrant a change by order) does not encompass a mere change of interpretation on the part of the Commission. Rather, it encompasses an acquisition of additional or new data or the discovery of new scientific or technical knowledge since the date of the original order was entered which requires a re-evaluation of the geological opinion concerning the reservoir. In the instant case no new data or newly discovered scientific or technical knowledge was introduced. The Commission was merely persuaded to accept a different interpretation of the facts known at the time of the original hearing.

Order No. 62317 of the Corporation Commission is vacated.

DAVISON, V. C. J., and JACKSON, IRWIN, HODGES and LAVENDER, JJ.. concur.