The CORPORATION COMMISSION of the State of Oklahoma and Terra Resources, Inc., Appellees,

v.

PHILLIPS PETROLEUM COMPANY et al., Appellants.

No. 46473.

Supreme Court of Oklahoma.

Jan. 28, 1975.

Rehearing Denied June 17, 1975.

Brown, Verity, Brown & Baker by G. L. Verity, Paul Brown, Oklahoma City, for appellee, Terra Resources, Inc.

Lloyd G. Minter, C. J. Roberts, Bartlesville, Edward J. Fauss, Galen E. Ward, Oklahoma City, for appellant, Phillips Petroleum Co.

Chester E. Blodgett, Tulsa, for appellant, Skelly Oil Co.

Robert F. LeBlanc, Charles A. Purser, Tulsa, for appellant, Cities Service Oil Co.

Wendell J. Doggett, Kansas City, Mo., C. C. Linley, Liberal, Kan., Barth P. Walker, Oklahoma City, for appellant, Panhandle Eastern Pipeline Co.

LAVENDER, Justice:

In 1965, upon application of Phillips Petroleum Co., the Corporation Commission entered Order No. 58465. That order was not appealed and became final. Its effect was to establish the entire Morrow formation in the South Guymon Area as a common source of supply. That order provided for 640 acre spacing. It approved field rules including a formula as to production allowables. The controlling element in that formula was the individual well's pressure cubed (raised to the third power).

Prior to the 1965 order, No. 58465, and in 1960 the Commission by Order No. 41483 originally spaced a portion of this South Guymon area as the Morrow formation. Later that year the area was extended. In May, 1963, Order No. 51679 established two separate common sources of supply, an Upper Morrow and a Lower Morrow, for part of this area. The 1965 order removed this two source of supply determination.

Subsequent to the 1965 order, two other attempts were made to delete parts of the area from that order's purview. In February, 1966, upon the application of Yingling, the Commission modified its 1965 order so as to again separate the Upper Morrow and the Lower Morrow as separate sources of supply by some 12 sections in the northern portion of the area. On appeal, this court vacated that order. Phillips Petroleum Co. v. Corporation Commission, Okl., 461 P.2d 597 (1969). That same year, 1966, upon application of CRA (now Terra Resources, Inc., applicant on order now on appeal, and appellee) the Commission by Order No. 62317 allowed two sections containing two wells, the Van Tine and the Kaser, to be removed from operations of the 1965 order. That order likewise separated the Upper and Lower Morrow. On appeal, this court vacated that order. Phillips Petroleum Co. v. Corporation Commission, Okl., 482 P.2d 607 (1971). As to both appeals, this court determined there was not substantial evidence to sustain a finding of substantial change of conditions or substantial change in knowledge of conditions existing in the area since the prior 1965 order was entered.

The present application by Terra Resources, Inc. (Terra) (same as CRA) seeks to delete some five wells or sections (possibly six) from the purview of the 1965 order No. 58465. The application includes the same area as the prior CRA application and involves the Van Tine and Kaser wells. This again is based on the establishment of two common sources of supply; (1) the Upper Morrow, consisting of the Morrow "A" and Morrow "C" and (2) the Lower Morrow. Terra argues the presenting of new knowledge of condition allowing the determination of two common sources of supply. Its proof is bottomed on a series of maps drawn by a computer program. The raw data consists primarily of annual readings of well pressure of

over 70 wells in the area for the years 1966, 1968, and 1970. The maps for the early year hints at the Upper Morrow ("A" and "C") as a separate common source of supply. Maps for the later years definitely confirm that indication. During some of these years, while the 1966 Order No. 62317 was on appeal and not superseded, the Van Tine and Kaser wells were allowed by that order to produce without the allowable restrictions under the field orders as found in the 1965 order.

Both wells greatly overproduced their allowables as determined by that 1965 order. Despite this heavy production from the Upper Morrow, the pressure of the wells producing from the Morrow "A" and "C" remained higher and without as much drop as compared with those producing from the rest of the area and generally from the Lower Morrow. Terra contends this production history and new data, not in existence and not available in 1965, establishes a substantial change in knowledge of conditions existing in the area to support a modification of the 1965 order to establish two common sources of supply and allow the deleting of the Upper Morrow from the effect of the 1965 order.

The opponents to the application argue the pressure reduction was predictable and therefore available at the hearings resulting in the 1965 order. They contend the computer maps only confirm the geological evidence before the Commission upon which the 1965 order is based. They believe there has been no acquisition of additional or new data upon which to base a modification or change of the 1965 order.

The Commission in its Order No. 96408, dated March 9, 1973, refused to delete the Upper Morrow from its determination of one common source of supply as the "Morrow Formation." This retained the allowable formula found in the field rules as to all wells. The order did grant a retroactive adjusting allowable equal to the amount of accumulated over-production as calculated by the field rules for Terra's Van Tine well and Phillips' Kaser well. It also permitted the Phillips Princess well to produce 25% of its open flow potential for four years as an exception to the field rules. The opponents to Terra's application, Phillips Petroleum Company (operator of approximately 60 wells or some ⅔rds of the wells in the area), Skelly Oil Company, Cities Service Oil Company, and Panhandle Eastern Pipeline Company (appellants) appealed as to that part of the order allowing the retroactive adjusting allowables. Terra (appellee) appealed that part of the order refusing to delete the requested sections and Upper Morrow formation from the purview of the 1965 order, No. 58465.

In its March 9, 1973, order, No. 96408, here appealed the Commission made certain findings:

(1) Its 1965 order, No. 58465, as to reclassifying of the Morrow to one common source of supply, was "based upon a finding of the Commission that although the Upper Morrow and the Lower Morrow formations were geologically separate sources of supply initially, they had, for all practical purposes, become one common source of supply by reason of a commingling of the Upper and Lower Morrow formations in the well bore of several wells."

(2) "There is little or no dispute that the Upper Morrow and the Lower Morrow are separate accumulations of hydrocarbons in this general area, being separated vertically by several hundred feet." (Approximately 350 ft.)

(3) The Upper Morrow contains at least two individual members, called the Upper Morrow "A" and the Upper Morrow "C". The Upper Morrow "A" is productive only in the Terra Van Tine well and the Phillips Kaser well. The Upper Morrow "C" is produced in the Phillips' Virgil well, Puckett well, and Princess well. The Princess well also produces from the Lower Morrow, with the production from the two zones commingled.

(4) The Upper Morrow "A" and the Upper Morrow "C" join together at some point so they comprise a single interconnected accumulation of hydrocarbons. Due to the substantial vertical separation between the Upper Morrow and the Lower Morrow in this area, the only possible pressure connection between those two formations is by means of the single open bore hole in the Princess commingled well.

(5) The most that applicant's evidence can prove is that the Upper Morrow is a separate accumulation of hydrocarbons, unconnected with other portions of the Morrow. The new evidence produced from subsequent production figures, and computer analysis of production data, served only to confirm what was already established in the earlier case.

(6) The overproduction of the Kaser and Van Tine wells had no significant adverse effect on the wells producing in the Lower Morrow. It is conceded that there·is no pressure connection between the Upper Morrow and the Lower Morrow except through the bore hole of the commingled Princess well. Since the pressure in the Upper Morrow is and has been higher than in the Lower Morrow in that well, and since the pressure is declining at a greater rate in the Lower Morrow than in the Upper Morrow, it is a practical impossibility for gas to migrate from the Lower Morrow to the Upper Morrow through the Princess bore hole.

(7) The Virgil and Puckett are productive in the Upper Morrow "C", while the Kaser and Van Tine produce from the Upper Morrow "A". The formations are connected at some point, but by the time the area of pressure decline travels through the "A" formation to the point of contact, and back through the "C" formation to the Virgil and Puckett wells, the pressure differential is completely dissipated and the latter wells remain unaffected.

(8) When the production from the Kaser and Van Tine was increased, the pressure in the Princess well started to drop at a rate greater than would have resulted merely from the production of the gas actually taken from that well. The most likely reason is that the pressure decline in the Kaser and Van Tine wells resulting from producing those wells at the higher rate has caused gas in the reservoir to move toward them and away from the Princess well. If this is the case, the Princess well has been injured by the higher rate of production from the Kaser and Van Tine wells.

These findings come from a large volume of expert and technical testimony including numerous exhibits.

A review of the record indicates little conflict as to facts, but some conflict as to their interpretation by the technical experts. The production allowable for all wells was under the established field rules until the 1966 order. From about October, 1966, through October, 1970, some four years, the Kaser and Van Tine wells were exempt from this common allowable formula. They produced at 25% of their own flow potential. That was a much accelerated rate over the other wells. For that period, the Kaser well produced approximately 1.35 billion cubic feet of gas. The Van Tine well produced approximately 3.4 billion cubic feet of gas. This was far in excess of the other Morrow wells.

Expert witnesses indicated that with the greatly accelerated production should have come accelerated reductions in well pressures throughout the common source of supply. The entire Morrow formation should have reacted by experiencing somewhat similar well pressures. This did not occur. The well pressure of the accelerated produced wells remained higher than the well pressure of the Lower and Upper Morrow "C" wells. The Princess well did retain the similar higher pressure of the Kaser and the Van Tine. This higher

pressure might permit some gas movement through the Princess's bore hole from the Upper to the Lower Morrow, but with no real production effect during the life of the field. The higher pressure prevented a movement in the bore hole of gas in the opposite direction. That bore hole was the only connection between the Upper and Lower Morrow. Lower Morrow gas could not move to and be produced through the Upper Morrow wells.

The computer maps, based on a four year production history and resulting well pressure reaction, demonstrated no actual production moving from the Lower to the Upper Morrow. The accelerated production from the Kaser and Van Tine wells contained no production from the Lower or Upper "C" Morrow. That accelerated production only included gas from the Upper Morrow "A". There were three producing wells from the Upper Morrow "A", the Kaser, the Van Tine, and the Princess. The only well that could have suffered was the Princess. No other well could have been similarly damaged.

We believe the findings of the Commission as contained in its Order No. 96408 are sustained by this substantial evidence. Peppers Refining Co. v. Corporation Commission, 198 Okl. 451, 179 P.2d 899 (1947).

In one of the prior attempts to modify or delete certain sections from the 1965 order, No. 58465, we held in a syllabus by the Court:

"The Corporation Commission is without authority to entertain an application to amend or modify a prior spacing order establishing a common source of supply which has become final, in the absence of a substantial change of conditions or substantial change in knowledge of conditions existing in the area since the prior order was entered. The phrase 'change in knowledge or conditions' encompasses an acquisition of additional or new data * * * which requires a re-evaluation of the geological opinion concerning the reservoir." Phillips Pe-

troleum Co. v. Corporation Commission, Okl., 482 P.2d 607 (1971).

The prior 1965 order made a finding as to the geological opinion in the Upper and Lower Morrow were geologically separate common sources of supply. Terra's evidence sustains and confirms that geological opinion. Its pressure data and computer maps, even if considered additional or new data, require the confirmation, not a re-evaluation, of the geological opinion concerning the reservoir.

It is a geological fact the Upper and Lower Morrow formations are geologically and substantially vertically separated. In the immediate area sought to be deleted, the only possible pressure connection between the two formations is by means of the single open bore hole in the Princess commingled well.

"We do not understand that in order to be a common source of suppply * * *, the gas producing sand through the entire area must be free from all faults or *obstructions of any kind,* so that a well drilled on one portion thereof would ultimately drain the entire common source of supply." Cities Service Oil Co. v. Anglin, 204 Okl. 171, 228 P.2d 191 (1951) (emphasis added).

The same geological facts, although established by different evidence in 1965, were known and recognized at the time the entire Morrow was spaced as a single common source of supply by Order No. 58465, despite the fact that geologically separate unconnected accumulations of hydrocarbons existed in the area. Evidence confirming the geological opinion already established in the earlier order does not establish the requisite "change of condition."

■ We sustain the Commission in refusing to modify its 1965 order, No. 58465, by deletion of the requested wells and section or to fix other field rules for that requested deleted area.

The Commission's order did grant both to Terra's Van Tine well and Phillips' Kaser well a retroactive adjusting allowable

equal to the amount of accumulated over-production as calculated by the field rules. It determined the only possible well hurt by the permitted over-production was Phillips' Princess well. The order gives that well the same permitted over-production to the field rules as enjoyed by Van Tine and Kaser for approximately the same period of time, four years. The Commission bases these adjustments on its authority to protect correlative rights.

This court has heretofore recognized and actually required the Corporation to grant a "retroactive adjusting allowable." British American Oil Producing Co. v. Corporation Commission, 180 Okl. 468, 69 P.2d 669 (1937). Appellants would distinguish the instant case, for there a retroactive adjusting allowable was allowed due to a mechanical well failure caused by the Commission itself in administering the proration law in failing to run an official potential test then required and when requested.

We believe the instant case is somewhat parallel to British American Oil Producing Co., supra. The Van Tine and Kaser wells were not arbitrarily overproduced. This over-production was a Corporation Commission permitted one under its Order No. 62317. That order was appealed but not superseded. 52 O.S.1971, § 242 allows orders of the Commission appealed to the Supreme Court to be superseded by the Commission or by the Supreme Court upon such terms and conditions as may be just and equitable. Although subsequently vacated, Order No. 62317 allowed the over-production to occur in the administration process of the proration laws. The order was not, but could have been, superseded. The over-production, at the time produced, was a permitted one under the appealed but not superseded order.

We believe the rationale in British American Oil Producing Co., supra, as to the recognition of "retroactive adjusting allowable" is based upon the just and fair administration of the proration law. That is to protect correlative rights.

Syllabus by the court in Choctaw Gas Company v. Corporation Commission, Okl., 295 P.2d 800 (1956) said:

"The grant of power to the Corporation Commission, under Tit. 52 O.S.1951 § 239, to regulate the taking of natural gas from a common source of supply 'so as to prevent waste, protect the interest of the public, and all of those having a right to produce therefrom' by necessary implication includes the power to employ such means as may be reasonably necessary to the accomplishment of those declared purposes; * * *."

That opinion also states:

"* * *. To protect such correlative rights, in addition to preventing waste, is one of the fundamental powers of the Corporation Commission under our proration statutes. See Cabot Carbon Co. v. Phillips Petroleum Co., Okl., 287 P.2d 675, 678, 679."

■ We hold the Corporation Commission by necessary implication under its grant of power to regulate the taking of natural gas under 52 O.S.1951, § 239 may employ such means as may be reasonably necessary to accomplish the declared purposes. This includes protection of correlative rights. This means may include a "retroactive adjusting allowable."

■ In the instant case the permitted over-production was an extensive amount. The Commission's findings, sustained by substantial evidence, determined the over-production of the Kaser and Van Tine wells had no significant adverse effect on the wells producing in the Lower Morrow. There was no practical migration of gas from the Lower Morrow to the Upper Morrow through the Princess bore hole. The Upper and Lower Morrow were geologically separated. The only possible well injured by the higher rate of production from the Kaser and Van Tine wells was the Princess. With the "retroactive adjusting allowables" granted the Kaser and Van Tine wells and the same permitted over-production (25% of its open flow

potential) given to the Princess for approximately the same period of time, four years, the Commission sought and has administered the proration laws in a just and fair manner. To protect correlative rights, in addition to preventing waste, is one of the fundamental powers of the Corporation Commission under our proration statutes.

The correlative rights under the Kaser, Van Tine, and Princess wells have been protected through the adjusting allowables in this case. We affirm that portion of Order No. 96408 here appealed.

The March 9, 1973, order, No. 96408, of the Corporation Commission is affirmed.

WILLIAMS, C. J., HODGES, V. C. J., and DAVISON, IRWIN, BERRY, BARNES and DOOLIN, JJ., concur.