**MARLIN OIL CORPORATION,
Appellant,**

v.

**CORPORATION COMMISSION of the
State of Oklahoma, Appellee.**

**No. 48643.**

Supreme Court of Oklahoma.

April 12, 1977.

Rehearing Denied Oct. 19, 1977.

James W. George, of George, Kenan, Robertson & Lindsey, Oklahoma City, for appellant.

Lloyd G. Minter, C. J. Roberts, Bartlesville, Edward J. Fauss, Galen E. Ward, Oklahoma City, for appellee, Phillips Petroleum Co.

Harvey H. Cody, Jr., Conservation Atty., State of Oklahoma, Oklahoma City, for appellee, Corporation Commission.

DOOLIN, Justice.

In 1957 the Corporation Commission (Commission) issued an order creating 640 acre drilling and spacing units for production of gas and gas condensate from the Morrow Sand underlying 422 square miles in Beaver County. Marlin Oil Corporation is the owner of a valid oil and gas lease covering the unit which is the subject of this appeal (subject unit). By an order in 1959 the Commission extended the spaced area to include the subject unit. Marlin later applied for and was granted an exception to drill an off pattern well in the subject unit. Upon drilling and testing (1974) this unit well (Blakemore), Marlin discovered evidence the Morrow Sand underlying the unit actually consists of two separate common sources of supply.

As a result of the drilling of the Blakemore, Marlin filed the present application requesting the Commission to vacate the original spacing orders, to re-establish the subject unit as two separate 640 acre drilling and spacing units, one for the Upper Morrow and one for the Lower Morrow and to declare the Blakemore to be the unit well for both sources. This would enable Marlin to have separate allowables assigned to it for each common source of supply although the Blakemore would continue to be the unit well for each.

The trial examiner after the hearing, recommended the application be granted based on the evidence submitted, indicating he found there actually were two separate unconnected sources of supply underlying the subject unit. Phillips, an appellee here, filed exceptions to the report. Following the hearing by the Commission on Phillips' exceptions, Commission denied the application because it felt that it had no authority to modify the 1957 order absent either a showing of change of conditions or change in knowledge of conditions that existed in the area when the 1957 order was entered. Commission found the evidence offered by Marlin in support of its application was consistent with evidence of conditions known at time of 1957 order, thus the necessary change in condition was not demonstrated. Marlin appeals.

The original 1957 order states:

> *"There is some question as to whether or not wells producing from the Morrow Sand over the area would be producing from the same common source of supply.* There is evidence that the Morrow Sand is laid down in lenses, and between these lenses there may be local non-productive areas, but such lenses may or may not be connected at some place within the area, so that there is communication between such lenses. Some geologists believe this is true, while others differ with this theory. *So this area may or may not be underlain by one common source of supply, and only future development can determine this.* But it is the undisputed evidence in this case that 640 acre units are the proper size units to be established, and if future development should determine that there is more than one pool or common accumulation of gas and gas condensate in the Morrow Sand in this area, and the question of ratable take arises, that can be controlled by proper field rules for such pool or pools, as the evidence at such hearing may justify." (Emphasis ours).

The general rule requiring a change of conditions, or a change in knowledge of conditions as a requisite to modification of

an unappealed Commission order has been espoused by a long line of cases.[1] This rule has recently been reiterated by a decision of this court in a case similar to the case at bar, *Corporation Commission v. Phillips Petroleum*, 536 P.2d 1284 (Okl.1975). In that case Terra Resources applied to Commission to delete the Upper Morrow underlying several sections from the purview of a prior order. It alleged new knowledge of existing conditions, not available at time of prior order, determined the Morrow consisted of two common sources of supply. Commission refused to delete the Upper Morrow from its determination of one common source of supply. Terra appealed and this court affirmed. There was little conflict as to the geological facts, only a conflict as to their interpretation by experts. This court held the same geological facts, although established by different evidence, were known and recognized at the time the entire Morrow was spaced as a single source of supply, despite the fact geologically separate unconnected accumulations of hydrocarbons existed in the area. Evidence presented by Terra merely confirmed the opinion of the Commission established in the earlier order and did not establish the requisite "change of conditions."

This decision supports the theory upon which Commission denied Marlin's application were it not for the distinguishing factors hereinafter recited.

Marlin's application was referred to a trial examiner to take testimony. Marlin produced evidence that the "future development" anticipated and called for by the 1957 order, demonstrated a change of knowledge of conditions since 1957 order was issued. This evidence of geological conditions indicated the new drilling operation showed a shale interval of approximately 200 feet between the segments of the Morrow. The pressures encountered were widely divergent. Evidence also suggested the shale was absolutely impervious to any comingling of production between

the Upper and Lower Morrow. None of the offsetting wells other than the Blakemore are producing from horizon of the Lower Morrow. Blakemore is now shut in for overproduction awaiting this decision.

Marlin also produced several orders issued by Commission pertaining to other drilling and spacing units covered by the 1957 order and its extensions. These orders recognized the existence of the two separate common sources of supply in the Morrow. Marlin submits these later orders, although certainly not controlling are evidence of "future developments," as well as evidence Commission did not intend the 1957 order to forever bar a determination that Morrow consists of two separate common sources of supply.

All the evidence considered by the Commission indicated the accumulations in the Morrow are not connected in any way and are separate sources of supply.

Phillips does not refute this finding. Its expert, testifying on cross examination, agreed there is a clear separation between the Upper and Lower Morrow encountered in the Blakemore well and there is no way any production encountered in either of these two zones could be communicated, each being a separate accumulation. The basis for Phillips' exceptions was not an objection to these findings of fact, but rather the absence of a showing of a substantial change in the conditions since the issuance of the 1957 order.

At the time of the issuance of the 1957 order only *17* wells had been drilled in Beaver County, some of which were dry, some of which were producing from what is now known as Lower Morrow, some from other lenses of the Morrow. There has been extensive drilling in the area since 1957; the majority of the wells have been drilled since that time. The 1957 order reflects a difference of geologic opinion as to whether the lenses were actually connected and whether

---

1. *Wood Oil Co. v. Corporation Commission*, 205 Okl. 537, 239 P.2d 1023 (1950); *Cameron v. Corporation Commission*, 414 P.2d 266 (Okl. 1966); *Phillips Petroleum Co. v. Corporation Commission*, 461 P.2d 597 (Okl.1969); *Phillips Petroleum Co. v. Corporation Commission*, 482 P.2d 607 (Okl.1971); *French v. Champlin Exploration, Inc.*, 534 P.2d 1302 (Okl.1975).

there was more than one common source of supply.

It was the opinion of the examiner that:

"The Commission did not intend to establish a spacing which could not be changed when the essential facts and evidence were presented to demonstrate a change in knowledge of conditions which would justify a change in spacing. The original order as issued in 1957 covered all known or expected areal extent of the total Morrow formation without regard to the location of the various lenses * *. In these particular causes, where the offset wells are not producing from the same common source of supply and where, therefore, those operators cannot be hurt by a well being granted two allowables, since they are producing from different Morrow reservoirs, it appears the application of the applicant should be granted as far as establishing the Upper Morrow and Lower Morrow as separate common sources of supply underlying (the subject unit)."

■ In appeals from orders of the Commission "the review by the Supreme Court shall not extend further than to determine whether the Commission has *regularly pursued its authority* and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence."[2] (Emphasis ours). We hold that under the evidence considered by the Commission it did not pursue its authority in the proper manner and its denial of Marlin's application was not sustained by the law and substantial evidence.

The order appealed from denied Marlin's application not because of lack of evidence of two sources of supply, but because Commission believed it was without authority to entertain Marlin's application in that contentions urged by Marlin were known and could have been urged at the hearing out of which the original order and subsequent orders were issued.

The Commission found evidence did not establish the required "change of conditions" because geological and engineering facts obtained from drilling of Blakemore are *consistent* with the geological and engineering facts known at time of 1957 order.

Whether or not Commission's order is sustained by the law and substantial evidence depends on what definition we ascribe to change of condition or change of "knowledge of condition." Must a "change of knowledge of conditions" be represented by evidence *entirely inconsistent* with the 1957 order?

The 1957 order was somewhat less than unequivocal, admittedly not explicit as to common source of supply. Although facts found by trial examiner may be consistent with the 1957 order, *any* newly acquired knowledge could be considered consistent with the 1957 order, whether it evidenced one common source of supply or two. The order itself states that future drilling would be evidence of the actual formations underlying the area. Discoveries made by the drilling of new wells must support one theory or the other recognized by the 1957 order. Here the new knowledge evidences two common sources of supply as defined in 52 O.S.1971 § 86.1(c). The other orders finding the Morrow is composed of more than one common source of supply, also indicate the 1957 order contemplated the type of modification sought here by Marlin.

■ Appellees in their brief on appeal claim Marlin's application is a collateral attack[3] on an unappealed Commission order not permitted under 52 O.S.1971 § 111. Surely the Legislature in enacting § 111 did not intend that every application for modification of an order made on grounds such order was based on incomplete geological data be deemed a collateral attack. To hold the Commission may never modify an unap-

---

2. Art. 9 § 20 Constitution of the State of Oklahoma.

3. Although Phillips claims Marlin's application is a collateral attack on 1957 order so it might be considered that Phillips' interpretation was

a collateral attack on the many other orders previously issued in the same area that determined the Morrow Sand actually consists of two common sources of supply instead of one.

pealed well-spacing order after a showing of existence of characteristics not previously known about the common source of supply, could prevent the Commission from performing its statutory duty to prevent waste and adjust the correlative rights of owners and lessees.[4]

■ We find Commission's 1957 order anticipated subsequent modifications by virtue of its wording and the subsequent orders determining the Morrow Sand to be two separate common sources of supply. We also find the above mentioned evidence supports the finding of the existence of two separate common sources of supply. If it were not for these two findings, the general rule and rational of *Phillips v. Corporation Commission*, supra, would apply. But in *Phillips* the initial order sought to be modified was unequivocal in its finding the Morrow Sand in that area was one source of supply. In *Phillips* the trial examiner found the new evidence did not preponderate either way and no change of condition was shown. Here the 1957 order was not unequivocal and the evidence now known points to two separate common sources of supply.

If Commission acknowledges from the evidence that geological conditions now known, demonstrate the Morrow actually consists of two separate common sources of supply, then the required prerequisite of "a change of condition or change of knowledge of conditions" has been met and Commission does have the authority to grant Marlin's application.

Accordingly, the order appealed from is hereby reversed and the proceeding remanded to Commission with instructions to vacate same and proceed in a manner not inconsistent with views herein expressed.

HODGES, C. J., and WILLIAMS, BARNES and SIMMS, JJ., concur.

LAVENDER, V. C. J., and DAVISON, IRWIN and BERRY, JJ., dissent.

---

4. *Application of Peppers Refining Co.*, 272 P.2d 416 (Okl.1954).