Gloria MEREDITH, Plaintiff in Error,

v.

CORPORATION COMMISSION of the State of Oklahoma and Shell Oil Company, Defendants in Error.

No. 38668.

Supreme Court of Oklahoma.

June 6, 1961.

Rehearing Denied Dec. 19, 1961.

Application for Leave to File Second Petition for Rehearing Denied Feb. 27, 1962.

Russell Thompson, Oklahoma City, for plaintiff in error, Gloria Meredith.

Vincent Dale, Guymon, for Texas County Land and Royalty Co.

Jesse M. Davis, Oklahoma City, for defendant in error, Shell Oil Co.

Ferrill Rogers, L. D. Hoyt, John Buckingham, Oklahoma City, for defendant in error, Corporation Commission.

JOHNSON, Justice.

Prior to 1953, the Corporation Commission designated by order No. 26812 an area in Texas and Cimarron Counties, Oklahoma, as a common source of supply for natural gas produced from the Keyes Sand underlying such area and ordered 640 acre spacing for all wells drilled thereon.

In May, 1953, upon application of Cities Service Oil Company, order No. 27077 was entered by the Corporation Commission finding that the Keyes Sand common source of supply of natural gas extended under other lands including Section 30, Township 6 North, Range 10 East in Texas County, and established 640 acre spacing. It extended the provisions of order No. 26812 to the new area. The lands of plaintiff in error are located in said section 30.

In accordance with the above order a well was drilled in section 30, and upon completion it had a gas-oil ratio which would have classed it as an oil well had it been the only well in the area.

Upon completion of this well, a dispute arose concerning the distribution of royalties, the plaintiff in error Meredith contending that the application of 640 acre spacing to an oil well located upon her property was in violation of the statute. The Shell Oil Company thereupon filed its application with the Corporation Commission for clarification of the former orders in their application to the oil well in Section 30. Upon hearing this application, the

Commission entered order No. 38791 wherein the judgment portion reads:

"It Is Therefore Ordered by the Corporation Commission of the State of Oklahoma that Order No. 26,812 in Cause CD No. 4351, and Order No. 27,077 in Cause CD No. 4640, were intended to and did govern the production and distribution of all hydrocarbons to be produced from the Keyes Sand common source of supply, whether oil or gas, or both.

"It Is The Further Order of this Commission that all of the royalty owners owning interests in Section 30, Township 6 North, Range 10 E.C.M., Texas County, Oklahoma, are entitled to share in the one eighth (⅛) part of all the hydrocarbons produced, saved and sold, whether oil or gas, or both, from the well now located and producing on said drilling unit."

From this order this appeal has been perfected by Meredith, the owner of the land in Section 30, upon which the well is located. She contends:

1. That order No. 38,791 was in fact the making of a new order.

2. That the Commission had no jurisdiction to hear said application or make such order.

3. That such order was in excess of statutory authority.

4. That such order deprived Meredith of her property without due process.

We believe all of the contentions of plaintiff in error may be considered under the above four heads.

For proper understanding of the issues it is necessary that the pertinent parts of order No. 26,812 be examined.

"Order

"It Is Therefore Ordered by the Corporation Commission of Oklahoma as follows:

"1. That 640 acre drilling and spacing units be established for the production of natural gas from the Keyes Sand common source of supply underlying the following described area:

"Sections 1, 2, 3, 4, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 32, 33, 34, 35, and 36, Township 5 North, Range 8 ECM
and
Sections 6, 7, 18, 19, 30 and 31, Township 5 North, Range 9 ECM
and
Sections 1, 2, 3, 4, 5, Township 4 North, Range 8 ECM
and
Section 6, Township 4 North, Range 9 ECM
Cimarron County, Oklahoma.

"2. That each governmental section shall constitute one drilling and spacing unit and the permitted well in each drilling and spacing unit shall be located in the center thereof with a tolerance of 467 feet in any direction at the option of the lessee; that the following exceptions as to the location of the permitted well shall be made since wells have heretofore been drilled in said section and the wells so drilled shall be the permitted well for the section in which it is located and no other well shall be drilled in that section—said section being described as follows:

"Sections 3, 16, and 26, Township 5 North, Range 8 ECM
And
Section 2, Township 4 North, Range 8 ECM

"3. That a map or plat be attached hereto marked Exhibit A and made a part hereof, showing the size and shape of the drilling and spacing units established herein and the location of the permitted well in each drilling and spacing unit.

"4. That all royalty interests within any drilling and spacing unit is hereby communized and each royalty owner shall participate in the production of the

gas from the well located in the section in the ratio that the acreage owned by him bears to the total acreage in the section. * * *"

The above order was based upon finding that the area designated is predominately a gas field overlying the Keyes Sand common source of supply, under authority of numerical provision number (4) under subsection (b) (1) of Sec. 87.1, Title 52 O.S. 1951. This is not an appeal from the designation of the area on the possible ground that the evidence did not justify such classification as a gas area.

■ It was agreed at the oral argument of this case that all gas wells produce some oil, and all oil wells produce some gas. The classification of the area is based upon the hydrocarbon element which predominates. The record shows that classification of the entire area as a common source for gas is correct. The sole issue is the rule to be applied to a well which produces oil in an area designated as a common source of supply for gas. We believe that the question could be raised and determined under order No. 26,812 without the clarification attempted to be made under order No. 38,791. Under this view, the order made under the latter number could not be a new or different order as contended by plaintiff in error if the same result would be reached under the former order No. 26,-812.

Considering the matter from this viewpoint, what is the effect of bringing in an oil well in an area designated as a common supply for gas? Should different rules be applied to such a well than those designated for a gas well? The answer to this depends upon the application to be made of the limitation contained in Title 52 O.S. 1951 Sec. 87.1(c) which provides:

"The Commission shall not establish well spacing units of more than forty (40) acres in size covering common sources of supply of oil * * *."

It is our construction of this particular statutory limitation that it has application only to area designated as a common source of supply of *oil*. We have no doubt that when the well located on the Meredith land was begun that it was believed that it would be a gas well as the majority of other wells in that area were. The fact that it proved to be an exception to the result usually obtained in the area does not compel a change in the spacing. To hold this could result in nothing but confusion. For example, the adoption of the rule contended for by appellant would mean the changing of the spacing order after the well came in, in any instance where an oil well occurred in a gas area. It would mean a change of spacing in each instance where the production of a particular well became predominantly oil where it had originally been a gas well.

It is our opinion that where an area has been properly designated and classified as a common source of supply for gas, and a well drilled in such area proves to be an exception to the general result in that it is an oil well, this spacing order and consequent division of royalty under the order originally made for gas wells are both legal and binding.

We are confirmed in this opinion by the case of Application of R. Olsen Oil Company, 205 Okl. 498, 239 P.2d 415. The facts therein are comparable to those in the instant case. In 1947, the Olsen Company drilled a producing oil and gas well on 120 acres which was ¾ of a quarter section. The remaining forty acres in the quarter was under lease to another company. The well was primarily a gas well, and shortly thereafter the Corporation Commission entered its order determining the well to be a gas well, establishing a twelve section area as a common source of supply for gas with 160 acre spacing. The order contained the following paragraph:

"4. That this order applies only to the production of gas in the second Wilcox sand and that in the event oil is found in commercial quantities in this common source of supply, then this order shall not apply to the production

of oil from said common source of supply."

The well which had been drilled by Olsen was predominantly an oil well, and when Olsen refused to allow the owners of the remaining forty acres in the 160 acre spacing to participate the controversy arose. Olsen then applied for a modification of the order urging the application of the forty acre statutory spacing, the same contention as here.

The court sustained the order of the Commission for 160 acre spacing. Some differentiation may be made between the Olsen case and that at bar, but by analogy the order of the Commission must be sustained.

We do not hold that under the facts of this case that the discretion of the Corporation Commission to increase the oil allowable for this particular well is curbed in any degree.

There is mention in the brief of plaintiff in error that no proper notice was given for the promulgation of the respective orders involved. This contention was apparently abandoned by plaintiff in error inasmuch as there was no mention of it in oral argument, but we make the following observations:

1. We have reached our conclusions herein without reference to the so-called clarification order. Therefore, the notice given on this is immaterial.

2. Meredith was not a party to the hearing on order No. 26,812, hence no notice had to be given her thereon.

3. On order No. 27,077 which extended No. 26,812 to include Section 30, there is no evidence in the record that she did not have notice. The presumption that notice was given placed the burden upon appellant to prove the lack of same.

The last proposition urged by appellant that the action of the Commission deprived her of property without due process is overcome by the provision of 52 O.S.1951 § 87.1(c), which is as follows:

"(c) The Commission shall have jurisdiction upon the filing a proper application therefor, and upon notice given as provided in sub-section (a) above, to decrease the size of the well spacing units or to permit additional wells to be drilled within the established units, upon proper proof at such hearing that such modification or extension of the order establishing drilling or spacing units will prevent or assist in preventing the various types of wastes prohibited by statute, or any of said wastes, or will protect or assist in protecting the correlative rights of persons interested in said common source of supply, or to enlarge the area covered by the spacing order, if such proof discloses that the development or the trend of development indicates that such common source of supply underlies an area not covered by the spacing order. The Commission shall not establish well spacing units of more than forty (40) acres in size covering common sources of supply of oil the top of which lies less than 9990 feet below the surface as determined by the original or discovery well in said common source of supply."

An administrative remedy for the situation, if it exists, is provided by this portion of the Act about which complaint is made. We hold this contention to be without merit.

Judgment affirmed.

WILLIAMS, C. J., and WELCH, DAVISON, HALLEY, JACKSON and BERRY, JJ., concur.

BLACKBIRD, V. C. J., dissents.