Howard F. LAYTON, Dorothy Mae Layton and Oil Incorporated, a corporation, Plaintiffs in Error,

v.

PAN AMERICAN PETROLEUM CORPORATION, a corporation, Calvert Petroleum Company, a corporation, Gulf Oil Corporation, a corporation, and King Stevenson Oil Company, Inc., a corporation, Defendants in Error.

No. 40098.

Supreme Court of Oklahoma.

June 11, 1963.

Rehearing Denied July 16, 1963.

Murphy & Evans, Shutler, Shutler & Baker, Kingfisher, for plaintiffs in error.

Monnet, Hayes, Bullis, Grubb & Thompson, Norton Standeven, Richard R. Linn, Oklahoma City, for defendants in error.

JOHNSON, Justice.

The plaintiffs in error, hereafter referred to as plaintiffs, are the owners of 273 acres of land in Kingfisher County, Oklahoma. On June 1, 1954, they executed an oil and gas lease to one W. A. Burton, Jr. for a primary term of five years. This land is located in a gas spacing unit of 640 acres created by the Corporation Commission. No well has ever been drilled upon the land of plaintiffs. This suit was brought

against the defendants, the owners of the 1954 lease, to cancel same. From an adverse judgment, the plaintiffs appeal.

There had been a previous suit brought by one Gazin to cancel his lease in this same 640 acre spacing because of alleged violation of the marketing clause. It was held by this court that although the primary time on the Gazin lease had expired, that a producing gas well had been brought in, and, although shut in, that diligent efforts had been made to market the gas, and therefore said lease was still in effect. See Gazin v. Pan American Petroleum Corporation, Okl., 367 P.2d 1010.

We are therefore confronted at the outset with the adjudication of this court that there was a valid, subsisting, producing lease in the 640 acre spacing established by the Corporation Commission at the date of such opinion, to-wit: January 16, 1962. And so long as such Gazin lease continues as a valid, producing lease, the term of the lease under consideration here is likewise in existence under the "thereafter" clause.

The facts thus reduce themselves to the simple query that where the land under an oil and gas lease, the primary term of which has expired, is located in a 640 acre gas spacing unit of the Corporation Commission, and a producing gas well has been brought in during the primary term of such lease upon another tract of land included in such 640 acre spacing order, is the term of such lease extended under the "thereafter" clause?

This is no longer an open question in this jurisdiction. In the case of State ex rel. Commissioners of Land Office v. Carter Oil Company of West Virginia, Okl., 336 P.2d 1086, this precise question was presented and answered. The second paragraph of the syllabus reads:

"By virtue of 52 O.S.1951 § 87.1, subsection d the 'thereafter' clause and the legal effect of the pooling order of the Corporation Commission of Oklahoma combine to result in an extension of the primary term fixed in an oil and gas lease if the well on any portion of

the pooled acreage satisfies the requirements of the clause."

In the body of the opinion we said:

"Under these circumstances we look to the Conservation Act, 52 O.S.1951 § 87.1, subsection d of which provides in part as follows:

"'* * *. The portion of the production allocated to the owner of each tract or interests included in a well spacing unit formed by a pooling order shall, when produced, be considered as if produced by such owner from the separately owned tract or interest by a well drilled thereon. * * *'

"By virtue thereof the portion of the production attributable to an owner by reason of a tract pooled with another tract, when produced, is considered as if produced from said separately owned tract and thereby complies with the terms and covenants of such separate lease. Of necessity it follows that legislative intent in the use of the words 'when produced' must be determined to enable us to arrive at a conclusion in this case.

"Section 87.1, supra, was enacted in 1947. It would appear logical that for the purposes of extending the primary term, and complying with the 'thereafter' clause fixed by the lease, the legislature intended the words 'when produced' as used, should mean that which this court had theretofore held the word 'is produced' to mean in such a case. In other words the purpose of the Act was the conservation of the oil and gas with particular attention directed to the protection of private lease contracts and the correlative rights of all parties in interest.

"See Panhandle Eastern Pipe Line Co. v. Isaacson, 10 Cir., 255 F.2d 669, wherein it was concluded that a reasonable interpretation of the 'thereafter' clause and the legal effect of an order of the Corporation Commission of Oklahoma combine to result in an extension beyond the primary term of a mineral deed if the well on the other portion of the pooled acreage satisfies the requirements of that clause."

■ It is obvious if one producing gas well has been drilled on the 640 acre spacing that no other gas well can be drilled thereon except in violation of the order of the Corporation Commission. This opinion has been cited with approval and followed in the Federal case of Whitaker v. Texaco, Inc., 10 Cir., 283 F.2d 169. In that case the statement of facts begins:

"In this quiet title action appellants-plaintiffs, herein referred to jointly as the Whitakers, sued to obtain a declaration that an oil and gas lease given by them had terminated because of non-development within the primary term of the lease. The trial court held that the term had been extended by a well drilled off the leased land but within a spacing unit which had been established by the Oklahoma Corporation Commission and which included a part of the leased premises. * * *"

The Circuit Court affirmed the trial court, and in the course of the opinion cites the State ex rel. Commissioners of Land Office v. Carter Oil Company of West Virginia, supra, several times.

At the time this case was tried, to-wit: June 1, 1960, the Gazin case mentioned supra had not been decided by this court, although that opinion did become final in January, 1962, just prior to the entry of judgment by the trial court in this cause.

In connection with the remaining contentions of plaintiff, the record evidences three things which should be borne in mind.

1. During the course of the trial the defendants tendered to plaintiffs a release of the oil and gas lease insofar as it affects the right to drill for and produce oil or gas from formations above the base of the Oswego (lime) formation. Said lease was so cancelled in the judgment of the court.

2. That all of the statutes granting power to the Corporation Commission about

which complaint is made were in effect prior to the execution of the lease in controversy.

3. This is not an action for damages for permitting the draining of the oil from under plaintiffs' land by wells upon adjoining property.

Among the remaining contentions of the plaintiffs are the following:

1. That the constitutional rights of plaintiffs have been violated in holding the lease when no drilling has been had on plaintiffs' land.

2. That the decision of the (lower) court disregards the contract between the parties and attempts to substitute another contract therefor.

The validity of the statutes granting powers to the Corporation Commission has been upheld by this court under the police power. See Patterson v. Stanolind Oil & Gas Co., 182 Okl. 155, 77 P.2d 83; Anderson v. Corporation Commission, Okl., 327 P.2d 699; Wakefield v. State of Oklahoma, Okl., 306 P.2d 305, and Wood Oil Co. v. Corporation Commission, 205 Okl. 537, 239 P.2d 1023.

As said in Anderson v. Corporation Commission, supra:

"A statute authorizing the Corporation Commission to regulate production of oil and gas so as to prevent waste and to secure equitable apportionment among owners of the leasehold interest of the oil and gas underlying their land, and to fairly distribute among them, the costs of production and of the apportionment is a proper exercise of the police power and does not violate the provisions of the State or Federal Constitutions."

Neither do such statutes impair the obligation of contracts for the reason that such statutes were in existence at the time this oil lease was executed. Therefore, the statutory provisions were incorporated in the lease by operation of law.

In the case of State ex rel. Roth v. Waterfield, 167 Okl. 209, 29 P.2d 24, we said in the body of the opinion:

"Thus it may be seen that changes in the obligations of contracts may be made when made as a proper exercise of the police power, not because constitutions may be suspended by police power, but because the right to legislate in the exercise of that power is a part of the existing law of the state at the time of the execution of the contract, and as such enters into the terms and provisions of the contract in the same manner that statutes prescribing procedure become a part of the contract."

And in the third syllabus we said:

"The right of the Legislature to act under the police power of the state is a part of the existing law at the time of the execution of every contract, and as such becomes in contemplation of law a part of that contract."

The second contention, supra, is answered by the opinions of this court upholding oil and gas leases after the expiration of the primary term by the drilling of a well on any part of the spacing unit. See Gazin v. Pan American Petroleum Corporation, supra.

The remaining contentions of plaintiffs are: (1) That the trial court erred in holding that plaintiffs accepted delay rentals, and (2) that the trial court erred in the admission in evidence of the gas purchase contract.

We think and hold that the first contention, supra, is wholly immaterial. If the lease was extended by production in the spacing unit, the payment or non-payment of delay rentals could not affect the matter in anywise.

In regard to the complaint about the admission of the gas purchase contract, it is necessary to set forth the facts surrounding this item. In the trial of this case, there was introduced in evidence the record of testimony, etc. which had been made in the case of Gazin v. Pan American Petroleum Company. This record was offered by plaintiffs and covered some 475 pages of

the casemade in this case. The evidence objected to by the plaintiffs is a part of the Gazin record which the plaintiffs themselves offered and which included the gas purchase contract of which they complain. We cannot hold that evidence introduced by the plaintiffs constitutes reversible error.

We find no error in the record, and the judgment of the trial court is affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and WELCH, DAVISON, WILLIAMS, IRWIN and BERRY, JJ., concur.