The CORPORATION COMMISSION of the State of Oklahoma, and Herman George Kaiser, Appellees,

v.

UNION OIL COMPANY OF CALIFORNIA, and Amoco Production Company, Appellants.

No. 50668.

Supreme Court of Oklahoma.

Feb. 27, 1979.

Harry C. Marberry, Oklahoma City, for appellees.

H. B. Watson, Jr., Watson, McKenzie & Moricoli, Oklahoma City, for appellants Union Oil Company of California and Amoco Production Company.

HARGRAVE, Justice:

Union Oil Company of California and Amoco Production Company appeal from Corporation Commission Order No. 128054 as corrected by Order No. 128263, wherein Herman George Kaiser, the appellee, was authorized to drill a well in the center of SW/4 of the SW/4 of Section 2, 10N, 9W, in Caddo County, Oklahoma, as an additional well to test the Morrow and Springer formation. The order fixes a penalty of 50% for the additional well and sets an allowable for the amended unit based on the greater open-flow potential of either the previously drilled on-pattern well or the anticipated well authorized by the order, in any case not to exceed 2.45 million cubic feet of gas per day (MMCFD).

Herman George Kaiser filed two applications pertaining to drilling authorization for this well in the SW/4 of the SW/4 of Section 2. One application requested authorization for an off-pattern well and the remaining application requested permission to drill an additional well in the unit.

In 1976, the applicant drilled the Kaiser Gilbert # 1, completing the well in the Boatwright zone of the Springer formation. This sand zone is in the lower Springer. Offsetting wells in adjacent Sections 3, 10, and 11 produce from a different zone of the Springer (the Britt) to the west, southwest and south of Section 2. The appellants are operators of these offsetting wells. Section 2 was previously established as a 640 acre drilling and spacing unit for the Morrow and the Springer zones found to be a single common source of supply in previous Order No. 121645.

The two applications were referred to a trial examiner for a hearing and report. A portion of the testimony from the hearing is abstracted here. Mr. Neff testified at the hearing for the applicant-appellee that a well drilled to the center of the SW/4 of Section 2 in 1974 in the Britt, produced a show of gas and 80 barrels of salt water. This witness stated the proposed location is desired to test the Britt sand. On cross-examination, Mr. Neff stated that at least 10 and as much as 80 feet of shale separates the Britt and Boatwright and both zones are considered part of the Springer formation. At this point in the testimony, after Mr. Neff had stated that the portion of the Boatwright which overlaps the Britt is invaded with water, the applicant's attorney stipulated that the only portion of the Springer to be tested by the proposed well is the Britt. Mr. Neff stated that Section 2 probably had Britt underlying one-half of its acreage and no present well in the Section was capable of producing from the Britt, but there were currently four wells outside the Section producing from the Britt zone.

The second witness was Mr. Waller. He stated in his testimony that at present there exists no well in Section 2 which could drain the Britt zone. It was his opinion that the requested well is not required to prevent waste since no potential production would be lost in its absence. However, he stated the well is required to protect the correlative rights of the parties inasmuch as there exist four offset wells producing from the Britt on the northwest, west and southwest.

This witness stated as production from the Britt continues, the requested well will become uneconomic because reserves from the Britt are being diminished. At the time of the hearing, the total reserves in place under Section 2 were approximately half of the amount originally found under the 300 acres of Britt underlying it. Mr. Waller noted the proposed well would pay out in less than four months at a cost of over $600,000.

In the report, the examiner recommended granting the application with an allowable for the proposed well to be assessed a 50% penalty. The unit allowable was to be set from the highest open-flow potential of either the proposed well or the previous test of the existing Kaiser-Gilbert well. The recommendation allowed the total unit production to be produced from either well as long as the pattern well (Kaiser-Gilbert) produced no more than 2.45 MMCFD; all parties excepted to the examiner's report. The Commission's finding and order generally follows the trial examiner's recommendation, stating that the applicant has drilled a well in the pattern location of the NW/4 of Section 2 which is producing in the Boatwright zone of the Springer formation and that it is necessary that the applicant be allowed to drill in the SW/4 of the SW/4 to test the Britt zone of the Springer. The reason for the need of the exception is found to be the fact that there are wells producing from the Springer Britt zone in offsetting Sections 3, 10 and 11, operated by Amoco and Texas Pacific and unless the exception is granted, the Britt zone of the Springer under the applicant's land will be drained by the offsets. The order finds that for the protection of correlative rights and prevention of waste, in addition to encouraging the development of the area and the greatest ultimate recovery, the application should be granted. The order authorizes the additional well, assigns a single lease allowable based upon the highest open-flow potential of the two wells, not to exceed 2.45 MMCFD.

Appellant's advance as their first proposition of error the allegation that the Com-

mission erred in allowing two wells to be drilled from a single common source in a single drilling and spacing unit, citing as authority *Layton v. Pan American Petroleum Corporation,* Okl., 383 P.2d 624 (1963). *Layton,* however, is not authority for the statement that the Commission does not have statutory authority to allow a second well to be drilled in a single spacing unit. In *Layton,* this Court states that after an order is entered establishing a drilling and spacing unit, no other well may be drilled on that unit without violating that previous order; therefore, the order results in the extension of the primary term fixed in an oil and gas lease if a well on any portion of the unit so formed satisfies the requirements of the thereafter clause. There was no issue raised in *Layton* pertaining to an application to modify or allow an exception to a previous order or what showing was required to establish a prima facie case in an application for an exception or additional well. We find an express grant of authority to the Commission in the statute in effect that time of the hearing, 52 O.S.1971 § 87.1(c) wherein it is stated:

> "The Commission shall have jurisdiction upon the filing of a proper application therefor, and upon notice given as provided in subsection (a) above, to decrease the size of the well spacing units *or to permit additional wells* to be drilled within the established units, upon proper proof at such hearing that such modification or extension of the order establishing drilling or spacing units will prevent or assist in preventing the various types of wastes prohibited by statute, or any of said wastes, or will protect or assist in protecting the correlative rights of persons interested in said common source of supply, * * *." [Emphasis added]

 Clearly, the quoted portion of the statute allows the Commission to authorize the drilling of an additional well within a drilling or spacing unit upon proof that the additional well or modification of the previous order will assist in preventing waste or the protection of correlative rights of persons interested in the common source of supply. In the order here questioned, the

Commission found *inter alia* that the granting of a permit to drill the additional well would assist in protecting the correlative rights of the parties. The inquiry then becomes one of whether the order is supported by substantial evidence. *French v. Champlin Exploration, Inc.,* Okl., 534 P.2d 1302 (1975). The uncontroverted evidence from the record demonstrates that the Britt and Boatwright are separate sources of supply within the single formation designated as a common source of supply in the previously issued final Order No. 121645. The testimony is also uncontroverted in revealing that unless the application made here is granted, the Britt sand underlying Section 2 will be drained by the wells in adjoining Sections 3, 10 and 11, to the detriment of the owners of oil and gas interests in Section 2. The statutory showing necessary for a modification order under 52 O.S.1971 § 87.1(c) is satisfied for purposes of review in this Court when the requested order curtails waste or where it would protect correlative rights. The use of the word "or" to connect these phrases in 52 O.S.1971 § 87.-1(c) indicates that the grounds for relief connected thereby are disjunctive, and each is sufficient in itself to authorize the relief requested. *Southwest Motor Carriers Corporation v. State,* 190 Okl. 491, 125 P.2d 760 (1942). The record clearly supports the Commission's finding that the permit to drill an additional well protects the correlative rights of the interested parties by allowing the applicant to offset the drainage from the three surrounding sections by allowing a well to be drilled to the Britt sand in the SW/4 of the SW/4 of Section 2.

 Secondly, the appellants contend the Commission had no jurisdiction to enter the order appealed from because the evidence indicates that these two portions of the Springer, being the Britt and Boatwright, are separate common sources of supply in Section 2. Admittedly, the record does uphold the factual conclusion contained in the proposition. In Section 2, the Britt and Boatwright are separate sources of supply. They are separated by 10 to 80

feet of shale. The appellant correctly notes that the Commission's authority as set out in the statutes relates to particular common sources of supply considered individually and separately without regard to other sources as noted in *H. F. Wilcox Oil & Gas Co. v. Walker,* 168 Okl. 355, 32 P.2d 1044 (1934). The conclusion drawn from the above principle is not applicable to the facts of this case however. Appellants conclude that the Commission acted outside the scope of its authority in permitting an additional well to be drilled to the second separate source of supply in a modification order, because the evidence taken at the hearing discloses there is no communication between the Britt and Boatwright and the Commission therefore has no authority to deal with the two sources in one order as a single common source of supply. Prior to this hearing, the Commission's Order No. 121645 established the Springer as a single common source of supply. That order is final and establishes all the Springer formation as a common source of supply. Once an area is properly classified as a common source of supply, all hydrocarbon production from that area will be controlled by the spacing and drilling order classifying the area until completely or partially replaced by a later order. *Harper Oil Company v. Hayes,* Okl., 431 P.2d 387 (1967); *Meredith v. Corporation Commission,* Okl., 368 P.2d 828 (1962). Inasmuch as there was no request to reclassify the Springer as two separate common sources, the Commission was bound to continue treating the Springer as a single common source as provided in the prior order.

The appellants request us to hold the only relief that could properly be granted where the facts show that there are two common sources covered in a single unit is vacation of the order and reclassification of the two sources in separate orders, relying upon *Marlin Oil Corp. v. Corp. Commission,* Okl., 569 P.2d 961 (1977). Marlin held that an application to modify a prior unappealed order should be granted where evidence indicated the order's common source actually contained two common sources. Marlin is not authority supportive of the offered error and is not applicable to the facts before us now. Marlin does not hold that the Commission should vacate a previous order and reclassify separate common sources where there exists no application for that relief simply because the proof adduced at a hearing indicates it is now known two common sources are covered in a previously granted final spacing and drilling order. Additionally, Marlin does not intimate that the Commission's ability to protect the correlative rights of the parties in such an instance is restricted to that particular form of relief, and thus does not demonstrate the Commission was incorrect in allowing an additional well on the unit as a means of offsetting drainage of the Britt by the surrounding units.

■ Additionally, the appellants contend that the order entered in this cause constitutes a collateral attack on the Commission's prior order inasmuch as there is no proof or change of condition in the formation or knowledge thereof. Title 52 O.S. 1971 § 111 prohibits collateral attacks upon final orders of the Commission, and this Court has held that the authority to modify must necessarily involve a changed factual situation from that existing at the time the order was entered, in order that the modification not constitute a prohibited collateral attack. *Cameron v. Corporation Commission,* Okl., 414 P.2d 266 (1966); *Wood Oil Co. v. Corporation Commission,* 205 Okl. 537, 239 P.2d 1023 (1950). We concede the correctness of appellant's contention, but the reliance thereon is misplaced here, inasmuch as the evidence complies with the required change of condition as this Court has applied that phrase in *Texas Oil and Gas Corporation v. Rein,* Okl., 534 P.2d 1277 (1975). In that cause, application was made to the Commission to modify a drilling and spacing order to allow a well to be drilled off of the pattern location. There this Court stated that establishing the well previously drilled to the center of the section

could not successfully compete for hydrocarbons, that uncompensated drainage was accruing, and that a well in the proposed location would compensate for future drainage, constituted substantial evidence that supported the modification. This is precisely the situation in the cause before the Court now. All parties have agreed that the Britt is a separate source and the Britt underlying Section 2 is being drained by Sections 3, 10 and 11, and the findings of the Commission are supportive of that evidence:

"3. * * * That it is the testimony of applicant that it is necessary to drill a well in the center of the SW/4 of the SW/4 of Section 2—10N9W Caddo County, Oklahoma, to test the Britt zone of the Springer formation and that the wells drilled by Amoco Production Co. in Sections 3 and 10, and by Texas Pacific in Section 11, all produce from the Britt zone; that if a well is not drilled in the center of the SW/4 of the SW/4 of said Section 2, the Britt zone of the Springer formation will be drained by the offsetting wells."

■ The appellants also urge this Court to hold the Commission erred in fixing an allowable which ignores the conceded fact that the two sources of supply are a matter of fact separate, stating that *H. F. Wilcox Oil & Gas Co. v. Walker,* supra, held that the Commission is not vested with the authority to deal with two common sources as a single unit when it sets an allowable. As previously stated in this opinion, the Commission correctly treated the Springer as a common source under the facts in this case. As long as Order No. 121645, which found the Springer to be a single common source, is in effect, the Commission is authorized to honor that order, 52 O.S.1971 § 111, and treat the source of supply as a single common source when fixing an allowable.

■ Finally, the appellants submit that the allowable fixed for the proposed well is clearly excessive and not sustained by the evidence. An order of the Corporation Commission will be affirmed if supported by substantial evidence and the law. *Barnes v. Transok Pipeline Company,* Okl., 549 P.2d 819 (1976); Oklahoma Constitution, Art. 9, § 20. When an order of the Corporation Commission is appealed, this Court is not required to weigh the evidence but will review the evidence and sustain the decision of the Commission if the order appealed from is supported by substantial evidence. *Oklahoma Transp. Company v. Corporation Com'n,* Okl., 552 P.2d 401 (1976). There is substantial evidence supporting the allowable fixed for the additional well found in the testimony of Mr. Waller. Therein, he stated that 300 acres in Section 2 were underlain by Britt sand above 8% net porosity. This witness additionally testified that four billion cubic feet of gas was present in Section 2 Britt before production in the adjoining sections began. His testimony establishes that to enable Section 2 to recover the 4 billion cubic feet of gas originally underlain, the additional well on Section 2 would of necessity have to recover 23% of the reserves remaining in place. (At the time of the hearing, 17.2 BCF remained in formation out of an initial reservoir of 33 BCF). 23% of the total daily production of 14.6 MMCFD is 3.3 MMCFD. This witness' testimony is substantial evidence supporting the allowable as fixed at 2.45 MMCFD and is also supportive of a 50% penalty based upon productive acreage in the section. The effect of the order in part is to allow the owners of rights to the gas in Section 2 to recoup some of the losses they have experienced up until now by virtue of the fact that they have been unable to produce from the Britt while offsetting wells drained approximately one-half of the reservoir. We have previously stated that where an order of the Commission results in some operators producing more than their ratable proportion of hydrocarbons, that the Commission is authorized to adjust future allowables in order to adjust the correlative rights of the parties. *H. F. Wilcox Oil & Gas Co. v. Bond,* 173 Okl. 348, 48 P.2d 820

(1935). The Commission's order is supported by expert testimony constituting substantial evidence and the law. This Court cannot and will not review the evidence to determine the preponderance thereof but will affirm the order of the Commission where the decision of that body follows the applicable law and is supported by substantial evidence. *Delaney v. Osborn*, Okl., 265 P.2d 481 (1954); *Peppers Refining Co. v. Corporation Commission*, 198 Okl. 451, 179 P.2d 899 (1947). Accordingly, the order here appealed from is affirmed.

AFFIRMED.

All the Justices concur.