Blanche **KUYKENDALL**, Leo Keathley, Stella Matlock, Lula E. Adams, W. F. Goode, D. H. Maddoux, and Charlie B. Crook, Appellants,

v.

**CORPORATION COMMISSION** of the State of Oklahoma, Leede Exploration, Union Oil Company of California, and El Paso Natural Gas Company, Appellees.

No. 52877.

Supreme Court of Oklahoma.

Sept. 22, 1981.

---

Gordon F. Brown, James H. Lockhart, Oklahoma City, for appellants.

H. B. Watson, Jr., Richard K. Books, Watson, McKenzie & Moricoli, Oklahoma City, for appellees, Leede Exploration and Union Oil Co. of California.

David T. Burleson, James M. Gaitis, El Paso, Tex., Robert J. Emery, Lytle, Soule & Emery, Oklahoma City, for appellee, El Paso Natural Gas Co.

LAVENDER, Justice:

This is an appeal from an order of the Corporation Commission of the State of Oklahoma denying appellants' (applicants before the Corporation Commission) application to delete certain sections of land in Roger Mills and Beckham Counties in Oklahoma from the provisions of a previous order of the Commission as extended which created 1440-acre drilling and spacing units

for production from the Mississippi, Morrow-Springer and Hunton formations, the application being to establish 640-acre drilling and spacing units from the common sources of supply. The Commission entered its order on September 19, 1978, granting the application as to the other formations, but denying the application insofar as the Hunton formation was concerned, from which order this appeal is taken.

The issues presented on appeal are whether a change in economic conditions relating to the development and production of a drilling and spacing unit established by a final order of the Corporation Commission under 52 O.S.1971, § 87.1 may be one of the bases for the Commission's modifying said order without said order of modification thereby being a collateral attack upon the Commission's final order as prohibited by 52 O.S.1971 § 111, and whether there was substantial evidence before the Commission that there was no change of knowledge pertaining to the drilling and spacing units previously established by a final order of the Commission which would require modification of the previous final order.

The parameters for judicial review of an order of the Commission determining whether a prior order establishing drilling and spacing units shall be modified are well established.

The pertinent provisions of 52 O.S.1971 § 111 are as follows:

"No collateral attack shall be allowed upon orders, rules and regulations of the Commission made hereunder, but the sole method of reviewing such orders and inquiring into and determining their validity, justness, reasonableness or correctness shall be by appeal from such orders, rules or regulations to the Supreme Court. On appeal every such order, rule or regulation shall be regarded as prima facie, valid, reasonable and just. * * *."

Statutory authority under which the Commission may exercise jurisdiction to in-crease or decrease the size of established well spacing units or to permit additional wells to be drilled within the established units lies in the provisions of 52 O.S.1980 Supp. § 87.1 which provides, insofar as it is applicable here:

"(d) The Commission shall have jurisdiction upon the filing of a proper application therefor, and upon notice given as provided in subsection (a) above, to decrease the size of the well spacing units or to permit additional wells to be drilled within the established units, upon proper proof at such hearing that such modification or extension of the order establishing drilling or spacing units will prevent or assist in preventing the various types of wastes prohibited by statute, or any of said wastes, or will protect or assist in protecting the correlative rights of persons interested in said common source of supply, or upon the filing of a proper application therefor to enlarge the area covered by the spacing order, if such proof discloses that the development or the trend of development indicates that such common source of supply underlies an area not covered by the spacing order and such proof discloses that the applicant is an owner within the area covered by the application. * * *."

■ To escape the prohibition against collateral attack upon a final order of the Commission establishing drilling and spacing units upon a common source, the applicant before the Commission must establish that there has been "a change of conditions, or a change in knowledge of conditions" which will "prevent or assist in preventing the various types of waste prohibited by statute, or any of said wastes, or will protect or assist in protecting the correlative rights of persons interested in said common source of supply."[1]

The Commission's Order No. 90490 made significant findings, a part of which were based upon economic considerations. The

1. *Marlin Oil Corp. v. Corp. Commission*, Okl., 569 P.2d 961 (1977); *Wood Oil Co. v. Corporation Commission*, 205 Okl. 534, 239 P.2d 1021 (1950); *Phillips Petroleum Co. v. Corporation Commission*, Okl., 482 P.2d 607 (1971); *Corporation Commission v. Phillips Petroleum*, Okl., 536 P.2d 1284 (1975).

Commission found that the Bruner No. 1 well was completed into the Hunton formations at 24,548 feet at a cost of $5,500,000 exclusive of acreage cost; that mechanical difficulties were encountered by reason of which electric logs could not be run; that the top of the Hunton was penetrated at approximately 24,060 feet; that a total of 466 feet of Hunton was penetrated by the Bruner No. 1; that studies of samples, drilling time, mud logs and lost circulation zones indicated 39 feet of net porosity that should average six per cent with thirty per cent average water saturation; that a substantial and infinite type reservoir has been found in each of said common sources of supply underlying the area involved; that the anticipated cost of a Hunton well is $3,170,000 and that the total investment in the well over its anticipated life of 20 years would be $4,190,000; that the anticipated revenue from a well located on a 1,000-acre unit is $7,042,578 with an anticipated return on investment of 3.9%, that the anticipated revenue from a well on a 1,280-acre unit is $9,014,599 with an anticipated return of 6.6% and that the anticipated revenue from a well located on a 1,440-acre unit is $10,-141,312 with an anticipated return of 8.142%; that a 1,440-acre drilling and spacing unit is the minimum size to prevent economic waste, encourage orderly development of the common sources of supply and protect the correlative rights of all mineral owners in the area; that one well will adequately and efficiently drain the economic recoverable natural gas and gas condensate in each of said common sources of supply. The Commission further found that the Bruner No. 1 encountered a large reservoir in a common source of supply which underlies substantially all of the area involved and the creation of a 1440-acre drilling and spacing unit is reasonably necessary to future expeditious and orderly development of the common source of supply in order to effectuate an orderly and equitable distribution of the hydrocarbons to be produced from the common source and to an equitable distribution of the risk and burdens inherent in the drilling of a well to said common source. The Commission conclud-

ed by finding in the interest of securing the greatest ultimate recovery of gas, the prevention of waste and the protection of correlative rights, the application should be granted, as to the other formations, but denied as to the Hunton.

The order of the Commission (Order No. 145,162) relating to the application of appellants to delete certain sections of land in Roger Mills and Beckham Counties, Oklahoma from the provisions of the Commission's Order No. 90490, as last extended by Order No. 97552, creating 1440-acre drilling and spacing units for production from the Hunton formations, and to create 640-acre drilling and spacing units, is as follows: (The order first recites the evidence presented by the applicant.)

"The Bruner well drilled * * * to a total depth of 24,548 feet to test the Hunton formation; as of January 1, 1978, this well had produced an accumulative of 124,952 MCF of gas and the testimony was that this well was draining an area of approximately 160 or 320 acres; a well had been drilled * * * which produced from the Mississippi formation at 17,300 feet in noncommercial quantities; the well was recently plugged back and completed in the Atoka formation; the Price well was drilled * * * and completed in June of 1974; this well is producing from the Morrow-Springer formation and had an accumulative production as of January 1978 of 767,000 MCF of gas and the testimony was that it was draining approximately 640 acres; the testimony of applicant generally shows that because of the drilling of these wells in this area, the formations do not contain enough porosity and permeability so as to enable a well to drain 1440 acres and that underground waste will occur by retaining these units on 1440 acres; that applicant's testimony further indicated that 640-acre drilling and spacing units would be an appropriate size unit to be established for these formations at these depths; the testimony of protestants shows that there has been development of the Hunton formation over a wide area in Western Oklaho-

ma and in the Texas Panhandle having indicated that the Hunton formation was capable of draining large area; that the Hunton formation is found at approximately 24,065 feet in this area and that it will cost in excess of 6 million dollars to drill and complete a well in the Hunton formation and that in order to be economically attractive to investors, it is necessary to retain the 1440 acres and that in protestants' opinion one well would drain the 1440 acres.

"4. That in the interest of securing the greatest ultimate recovery from the pool, the protection of correlative rights and the prevention of waste, this application should be granted insofar as the Mississippi and Morrow-Springer formations are concerned and denied insofar as the Hunton formation is concerned.

## ORDER

"IT IS THEREFORE ORDERED by the Corporation Commission of Oklahoma as follows:

\* \* \* \* \* \*

"2. That this application be and the same is hereby denied insofar as it pertains to the Hunton formation."

 If the order of the Commission is supported by substantial evidence, it must be sustained upon appeal to this Court.[2] And, as we said in *Landowners Oil, Gas and Royalty Owners v. Corporation Commission:* [3]

"The determination whether there is 'substantial evidence' to support an order made by the Corporation Commission does not require that the evidence be weighed, but only that the evidence tending to support the order be considered to determine whether it implies a quality of proof which induces the conviction that the order was proper or furnishes a substantial basis of facts from which the issue tendered could be reasonably resolved."

The word "waste" as applied to the drilling, operation and control of oil and gas wells takes on a generic quality which extends and applies to a great variety of activities.

Our own legislature has defined it, as it pertains to gas, as:

52 O.S.1971 § 86.3

"The term 'waste', as applied to gas, in addition to its ordinary meaning, shall include the inefficient or wasteful utilization of gas in the operation of oil wells drilled to and producing from a common source of supply; the inefficient or wasteful utilization of gas from gas wells drilled to and producing from a common source of supply; the production of gas in such quantities or in such manner as unreasonably to reduce reservoir pressure or unreasonably to diminish the quantity of oil or gas that might be recovered from a common source of supply; the escape, directly or indirectly, of gas from oil wells producing from a common source into the open air in excess of the amount necessary in the efficient drilling, completion or operation thereof; waste incident to the production of natural gas in excess of transportation and marketing facilities or reasonable market demand; the escape, blowing or releasing, directly or indirectly, into the open air, of gas from wells productive of gas only, drilled into any common source of supply, save only such as is necessary in the efficient drilling and completion thereof; and the unnecessary depletion or inefficient utilization of gas energy contained in a common source of supply. \* \* \*."

52 O.S.1971 § 237

"The term waste, as used herein in addition to its ordinary meaning, shall include escape of natural gas in commercial quantities into the open air, the intentional drowning with water of a gas stratum capable of producing gas in commercial quantities, underground waste, the permitting of any natural gas well to wastefully burn and the wasteful utilization of such gas."

**2.** *Corporation Com'n v. Union Oil Co. of California*, Okl., 591 P.2d 711 (1979).

**3.** Okl., 415 P.2d 942 (1966).

52 O.S.1971 § 243

"The Corporation Commission shall have authority to make regulations for the prevention of waste of natural gas, and for the protection of all natural gas, fresh water, and oil bearing strata encountered in any well drilled for oil or natural gas, and to make such other rules and regulations, and to employ or appoint such agents, with the consent of the Governor, as may be necessary to enforce this act."

See *Quinton Relief Oil & Gas Co. v. Corporation Commission of State of Oklahoma*, 101 Okl. 164, 224 P. 156 (1924) wherein we held that this act in conferring on the Corporation Commission the power to make rules and regulations to prevent the wasteful utilization of natural gas, and leaving to that body the power to define what uses are within the scope of that term was not such a delegation of power to the Commission as to render the act unconstitutional.

In *Storck v. Cities Service Gas Company*, Okl., 575 P.2d 1364, 1368 (1978) we said:

"It is public policy that ' . . . The production of oil in the State of Oklahoma in such manner as to constitute waste as . . . defined is hereby prohibited . . . .' 52 O.S.1971, § 86.2. The term 'waste' as applied to the production of oil is defined in part as *economic waste and underground waste*. Ibid. As applied to the production of gas the term 'waste' is defined in part as the production of gas in such quantities or in such manner as unreasonably to reduce reservoir pressure or unreasonably to diminish the quantity of oil or gas that might be recovered from a common source of supply. 52 O.S.1971 § 86.3. Waste can consist of unreasonable production or unreasonable non-production." [Emphasis added.]

In *Gilmer Oil Co. v. Corporation Commission of Oklahoma*, 177 Okl. 505, 61 P.2d 22 (1936) at p. 24 we held, "A loss of ultimate recovery is nothing more nor less than waste."

In *Denver Producing & Refining Co. v. State*, 199 Okl. 171, 184 P.2d 961 (1947) we said (p. 964), "In striking a balance between conservation of natural resources (prevention of waste) and protection of correlative rights, the latter is secondary and must yield to a reasonable exercise of the former."

In *Delaney v. Osborn*, Okl., 265 P.2d 481 (1954) we upheld an order of the Commission amending a previous final order by changing the permissible ratio of oil to gas production where there was no change in geology or in the action of the wells pertaining to the common source, the only change being that development of the field and depletion of the reservoir resulted in channeling and underground drainage causing the gas cap to expand westward thereby causing "waste" and affecting correlative rights by giving some wells an unfair advantage in the production from the common source. It was found and determined that the previously established ratio "is a wasteful utilization of gas in the operation of oil wells drilled to and producing from the common source of supply."[4]

We are now called upon to consider whether general economic conditions such as an increase in the price of gas which effect financial inducements to drill and develop a common source are to be included within the kaleidoscope of "waste".

■■ Every person has the right to drill wells on his own land and take from the pools below all the gas and oil that he may be able to reduce to possession including that coming from land belonging to others, subject to the reasonable exertion of the power of the state to prevent unnecessary loss, destruction, or waste.[5] That minerals are being found in increasingly deeper formations, that the cost of drilling and producing them is ever increasing, and that the market price being paid for the product will vary with time are economic realities

---

**4.** For additional cases in which the word "waste" is applied and defined as used in oil and gas conservation and regulations, see 38 Am.Jur.2d Gas and Oil § 157; 86 A.L.R. 431.

**5.** *Wood Oil Co. v. Corporation Commission*, 205 Okl. 537, 239 P.2d 1023 (1950).

which cannot be ignored. Yet they are shifting economic sands which change with the times, so that which is feasible from a monetary standpoint today, may not be to-morrow, not because the geological or scientific knowledge pertaining to the common source has changed, but because economic conditions have materially altered the feasibility of development of the field. We therefore hold, that if by increasing the size of a drilling or spacing unit, or if by decreasing it the practicable recoverability of minerals may be affected, the Corporation Commission may consider such factors as constituting "waste". We emphasize, however, that it is only one factor to be considered, and its persuasiveness must not only be tempered by other pertinent considerations which may override its influence, but which may well displace it.

■ On appeal, this Court is required to review the evidence, and must sustain the order appealed from if it is supported by substantial evidence.[6] "By substantial evidence" is meant evidence that possesses something of substance and of relevant consequence and such that carries with it fitness to induce conviction.[7] This determination does not require that the evidence be weighed, "but only that the evidence tending to support the order be considered to determine whether it implies a quality of proof which induces the conviction that the order was proper or furnishes a substantial basis of facts from which the issue tendered could be reasonably resolved."[8]

■ From an examination of the evidence as disclosed by the record before us, we find that the Commission did consider the consequences of the increase in the price of gas upon the economic inducement to explore and develop production from the common source. We further find that there was substantial evidence before the Commission on the basis of which it found and determined that there was no substantial change of conditions or substantial change in knowledge of conditions existing in the area since the prior orders were entered.

The testimony of Clyde Pine, a petroleum geologist and partner in Leede Exploration, that one well could adequately and efficiently drain 1440 acres of surface area, and that the overall economic factors existing at the time of the hearing, including the increase in the price of gas, did not indicate a substantial change in either geological or economic conditions as compared with those existing at the time the previous orders of the Commission, was sufficiently substantial evidence to support the order as to the Hunton formation.

Accordingly, we find there was "substantial evidence" to support the Commission's denial of appellants' application.

AFFIRMED.

IRWIN, C. J., and WILLIAMS, HODGES, HARGRAVE and OPALA, JJ., concur.

BARNES, V. C. J., and SIMMS, J., concur in result.

DOOLIN, J., dissents.

6. Corporation Commission v. Union Oil Co. of California, Okl., 591 P.2d 711 (1979); French v. Champlin Exploration, Inc., Okl., 534 P.2d 1302 (1975); Pannell v. Farmers Union Cooperative Gin Ass'n, Okl., 192 Okl. 652, 138 P.2d 817 (1943); Peppers Refining Co. v. Corporation Commission, Okl., 198 Okl. 451, 179 P.2d 899 (1947).

7. Anderson-Prichard Oil Corp. v. Corporation Commission, Okl., 205 Okl. 672, 241 P.2d 363 (1951).

8. Landowners Oil, Gas and Royalty Owners v. Corporation Commission, Okl., 415 P.2d 942 (1966).