Frederick A. WINTER and Alta Rose Winter, John Nightengale and Joann Nightengale, Alfred Jensen and Avarella Jensen, Appellants,

v.

CORPORATION COMMISSION OF the STATE OF OKLAHOMA, Jon R. Withrow and Cherokee Associates, Appellees.

No. 57321.

Court of Appeals of Oklahoma, Division No. 1.

Feb. 1, 1983.

Released for Publication by Order of Court of Appeals March 4, 1983.

John R. Robertson, Jr., Oklahoma City, for appellants.

Watson, McKenzie & Moricoli by Richard K. Books, Lee K. Simpson, Oklahoma City, for appellees Jon R. Withrow and Cherokee Associates.

ROBINSON, Judge:

This is an appeal from Order No. 198087 of the Corporation Commission of the State of Oklahoma entered on September 10, 1981, in Cause CD No. 69728 and Cause CD No. 70606. The application in Cause CD No. 69728 (Winter, et al.) was filed for the purpose of vacating existing 640-acre drilling and spacing units for the production of gas and gas condensate from the unconformity Chester, Mississippian and Manning separate and distinct common sources of supply underlying all of Section 13, Township 21 North, Range 12 West, Major County, Oklahoma and thereafter for an order establishing 80-acre drilling and spacing units for the production of oil and gas from the unconformity Chester, Mississippian and production of oil and gas from the unconformity Chester, Mississippian and Manning separate and distinct common sources of supply underlying said section.

The application in Cause CD No. 70606 (Withrow, et al.) was filed for the purpose of establishing proper well density in the Mississippian (Mississippi solid) common source of supply underlying all of Section 13, Township 21 North, Range 12 West, Major County, Oklahoma.

These causes were joined together for purposes of hearing and testimony and one order, Order No. 190704, was issued denying application of Winters, et al. and recommending application of Withrow, et al.

The appropriate Corporation Commission appeal procedures were then utilized by Winter, et al., culminating in the issuance of Order No. 198087 which granted Withrow's application authorizing the drilling of three additional wells in each quarter section of Section 13 to test the Mississippian (Mississippi solid) common source of supply. The Commission found that to respace the unit on the basis of 80 acres would tend to create waste and damage correlative rights and that the best method of development was to increase well density. The Commission also found that there had been a substantial change of conditions or knowledge of conditions as to the Mississippian (Mississippi solid) common source of supply in that the current unit well would not effectively and efficiently drain the recoverable hydrocarbons from such common source of supply. The Commission further found that Withrow, et al. had, pursuant to Order No. 190704, commenced drilling an increased density well at a legal location in the NE/4 of Section 13. The Commission's order provided that in the event Withrow, et al. failed to commence a third well within ninety days after the spud date of the second well already commenced, the order would become null and void as to the third and fourth wells provided for by the order. In like manner, should Withrow, et al. fail to commence a fourth well in Section 13 within ninety days of the spud date of the third well, the order would become null and void as to the fourth well. It is order No. 198087 which is the subject of this appeal.

Appellants raise essentially two propositions of error for disposition in this appeal. First, appellants argue that the Commission's choice of increased density drilling as opposed to despacing is not supported by substantial evidence as such choice permits waste and fails to protect correlative rights. The appellants' second proposition is that the Commission erred in continuing Cause

CD No. 69728 and holding a second, combined hearing on Causes CD Nos. 69728 and 70606.

I

■ Prior spacing order No. 192841, entered on April 19, 1977, established Section 13 as a 640-acre drilling and spacing unit for the Mississippian (Mississippi solid) common source of supply underlying Section 13 and authorized the drilling of only one well in the unit. Both Withrow, et al. and Winter, et al. sought to modify this spacing order and were required to prove initially that there had been a substantial change of conditions or substantial change in knowledge of conditions in the area since the prior order had been issued.[1] If they were successful in establishing a substantial change of conditions or knowledge then they were required to prove that their particular method of modifying the spacing order would either prevent waste or protect correlative rights.[2]

All parties to this appeal agree that there has been a substantial change of conditions or substantial change in knowledge of conditions of the Mississippian (Mississippi solid) common source of supply underlying Section 13 since the original spacing order was issued in that it is now believed that the one well currently on the unit, the Nightengale No. 1, will not effectively drain the unit and more wells are needed.

■ Winters, et al. advocates despacing and Withrow, et al. advocates increased density drilling with the Commission, by its order No. 198087, finding that increased density is the better method of developing the unit at this time. The Commission, under 52 O.S.Supp.1980 § 87.1(d), is empowered where there is substantial evidence of a change of conditions or knowledge of conditions to either change the size of the existing drilling and spacing units or to

1. *Phillips Petroleum Co. v. Corporation Commission*, 461 P.2d 597 (Okl.1969); *French v. Champlin Exploration, Inc.*, 534 P.2d 1302 (Okl. 1975); *Kuykendall v. Corporation Commission*, 634 P.2d 711 (Okl.1981).

2. 52 O.S.Supp.1980, § 87.1(d); *Corporation Commission v. Union Oil Company of California*, 591 P.2d 711 (Okl.1979); *Kuykendall v. Corporation Commission*, 634 P.2d 711, (Okl. 1981); *Union Texas, etc., v. Corporation Commission, etc.*, 651 P.2d 652 (Okl.1982).

permit the drilling of additional wells in existing drilling and spacing units where such action is necessary to prevent waste or to protect correlative rights. Having been given a choice of remedies, it is incumbent upon the Commission to use the remedy which will best prevent waste and protect correlative rights. The issue, therefore, is whether there is substantial evidence showing that the prevention of waste and protection of correlative rights will be better accomplished by the drilling of additional wells rather than by establishing 80-acre units.

Article 9, § 20 of the Oklahoma Constitution requires this Court to limit its review of Order No. 198087 to determining whether the order is supported by substantial evidence. Such a determination does not require that the evidence be weighed, only that there be evidence tending to support such order.[3] However, such a review must entail the whole of the evidence found in the record, including such evidence which fairly detracts from the weight thereof.[4]

## II

■ Is the Commission's order supported by substantial evidence to show that increased density rather than despacing will prevent waste? Title 52 O.S.1981 §§ 86.2 and 273 include "economic waste" as being a type of waste which the Commission is bound to prevent and the Supreme Court has also recognized such waste.[5] In the case at bar, the evidence reflects that there is some dispute as to whether the reservoir under Section 13 is an oil reservoir or a gas reservoir. Winter, et al.'s witnesses advocated that the formation is an oil reservoir because the liquids produced from the Nightengale No. 1 well had a 34 to 38° gravity. Withrow, et al.'s expert witness, who had worked in the area for over three years, stated that the reservoir was a gas

reservoir based upon the fact that the cumulative production from the Nightengale No. 1 well since first production through July, 1980, was. 80 million cubic feet of gas and 3,928 barrels of oil, resulting in a 20,500–1 gas-oil ratio, which would indicate a gas well. Further, Withrow, et al.'s witness testified that the nature of the Mississippian (Mississippi solid) common source of supply was believed to be a gas reservoir based upon the offsetting wells to the west and to the south of Section 13 which are gas wells with gas-oil ratios from 99,000/1 to 51,000/1, and based upon the three to four percent porosity found in the Nightengale No. 1 well. The predominately oil porosity trend of eight to ten percent found in Sections 11 and 12 located north of Section 13 were not present in either the dry hole drilled in the north half of Section 13 or the Nightengale No. 1 well. Winters' own witness stated that there was no communication between the oil reservoir in which the wells in the south half of Section 12 were producing and the Mississippian (Mississippi solid) formation underlying Section 13 from which the Nightengale No. 1 produces. Winter, et al. discounts the validity of using a gas/oil ratio to determine whether a reservoir is oil or gas. As to drainage, Winter, et al. testified that a well would only drain at the most an 80-acre unit. Whereas Withrow, et al.'s witness testified that this was a gas reservoir and that one well on each 160-acre quarter section would effectively drain the unit and that it would be economic waste to drill on each 80-acre tract in Section 13.

As the evidence reflects, there is a question as to what kind of reservoir underlies Section 13 and how many wells are needed to effectively drain said reservoir. The character and drainage capabilities of the Mississippian (Mississippi solid) common

**3.** *Yellow Transit Company v. State,* 198 Okl. 229, 178 P.2d 83 (Okl.1947); *El Paso Natural Gas v. Corporation Commission, etc.,* 640 P.2d 1336 (Okl.1982).

**4.** *Universal Camera Corporation v. National Labor Relations Board,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Brown v. Banking*

*Board,* 512 P.2d 166 (Okl.1973); *El Paso Natural Gas v. Corporation Commission, etc.,* 640 P.2d 1336 (Okl.1982).

**5.** *Southern Oklahoma R.O. Association v. Stanolind Oil & Gas Company,* 266 P.2d 633 (Okl. 1954); *Ward v. Corporation Commission,* 470 P.2d 993 (Okl.1970).

source of supply underlying Section 13 have not yet been completely defined by drilling and proof of its character is far from complete. Eighty-acre spacing would require an additional seven wells be drilled instead of three and based upon the evidence presented would most likely result in unnecessary wells being drilled resulting in economic waste.

Consistent with such evidence, we are of the opinion that the order appealed from in this case indicates an exercise by the Commission of its skill and technical experience in refusing to give its approval to spacing that might result in much economic waste by the drilling of unnecessary wells. Once the three additional wells proposed by Withrow, et al. are drilled, the parties will be able to ascertain whether Section 13 is being effectively drained.

We therefore find that substantial evidence exists to conclude that the Commission's choice of increased density drilling is supported by substantial evidence, as such choice prevents economic waste.

### III

Is the Commission's Order supported by substantial evidence to show that increased density rather than despacing will protect the parties' correlative rights? Mr. Howard H. Harris, the author of an article entitled "Modification of Corporation Commission Orders Pertaining to a Common Source of Supply," dated May, 1958, Vol. 11, Ok.L. Rev. 125, states at page 130:

3. Each individual owner has the right:

A. To have the basic nature of his interest maintained, and to have his contractual rights with other persons remain undisturbed, except insofar as their abrogation is absolutely necessary to effect accomplishment of the conservation objective; . . . .

Apparently, the correlative rights of the mineral owners would be protected regardless of whether the Commission had ordered despacing or increased density. If despacing was granted by the Commission, the mineral owners in the section had reached a written agreement with respect to the equitable distribution of proceeds attributable to royalty generated by any subsequently drilled well on the section, thereby normalizing correlative rights among the royalty owners. However, if the Commission had ordered despacing, the owners of the leases, Withrow, et al., correlative rights would not have been protected. The primary terms of the leases owned by Withrow, et al. in Section 13 had expired and had the Commission required despacing of the unit into 80-acre units, rather than authorizing the drilling of additional wells, Withrow would have lost all leasehold rights except for those incident to the 80-acre unit on which the Nightengale No. 1 well would have been located. Increased density, rather than the establishment of 80-acre units, was the method of requiring development of the unit with the least interference with Withrow, et al.'s contractual rights to develop Section 13 under his leases.

■ Winter, et al. alleges that Withrow, et al. agreed by letter to the despacing of Section 13 and then sought increased density of the unit when he could not obtain new leases from Winter, et al. Withrow, et al. maintains that the letter was merely an offer of settlement and shows no bad faith on the part of Withrow, et al. We agree, as the letter has no relevancy to the issue of which method of development of Section 13, increased density or despacing, would be the most appropriate to protect correlative rights and prevent waste.

Winter, et al. also complains that the wells located in the south half of Section 12, in which Withrow, et al. admittedly owns an interest, and in Section 7, in which Withrow, et al. does not own an interest, will drain the Section 13 unit because they are located within 330 feet of the unit line. However, Winter, et al.'s own witness testified that the wells in Section 12 and Section 7 are located in 80-acre units and are not producing from the same common source of supply that underlies Section 13, are oil wells and if indeed draining hydrocarbons from Section 13 at all, it was in an amount so small that it could not be accounted for.

■ Finally, the admonition contained in *Union Texas Petroleum v. Corporation Commission,* 651 P.2d 652 (Okl.1982), that despacing may be favored over increased density when operators have not drilled additional wells when authorized to do so by increased density orders, has no application in this case. There is no evidence in the present case that Withrow, et al. will not carry out the development of Section 13 after being authorized to do so by Order No. 198087. The fact that Withrow, et al. had already commenced an additional well under the administrative review panel's order in the same cause, before the Commission even heard exceptions to the panel's order, evidences Withrow et al.'s good faith intent to develop the unit. Further, Order No. 198087 specifically provides that the third and fourth wells must be commenced within a certain time period or the order would become null and void.

From the foregoing, it therefore can be determined that there is substantial evidence that the order is necessary to protect correlative rights.

## IV

■ In Winter, et al.'s second proposition, they allege in their initial brief that a hearing was held on their application in Cause CD No. 69728 on July 8, 1980, in which the cause was recommended and that the Commission erred in continuing said Cause and holding a second, combined hearing on both Causes CD Nos. 69728 and 70606. There is no evidence in the record that Winter, et al. made any objection to a continuance or combined hearing. Further, Winter, et al. does not list this proposition as an assignment of error in his petition in error. Such error is complained of and raised for the first time in his brief. Errors raised for the first time and argued in the briefs but not raised at trial court or in petition in error will not be considered on appeal.[6]

For the reasons stated above, Order No. 198087 of the Corporation Commission is

determined to be supported by substantial evidence and acts to prevent economic waste and protect the parties' correlative rights and is therefore affirmed.

AFFIRMED.

REYNOLDS, P.J., and YOUNG, J., concur.

---

**6.** *Roberts v. Roberts,* 357 P.2d 980 (Okl.1961); *Martin v. Harrah Ind. School Dist.,* 543 P.2d

1370 (Okl.1975); *Nu-Pro, Inc. v. G.L. Bartlett & Co., Inc.,* 575 P.2d 618 (Okl.1977).